# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NEWPORT NEWS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| LURIA NICOLE GREENE, | ) | |
| | ) | Case No. 10-51071-SCS |
| *Debtor.* | ) | |
| | ) | |
| LURIA NICOLE GREENE, | ) | |
| | ) | APN 11-05016-SCS |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF EDUCATION, | ) | |
| | ) | Chapter 7 |
| *Defendant.* | ) | |
| | ) | |

## MEMORANDUM OPINION

Luria Nicole Greene ("Ms. Greene"), an unrepresented debtor, filed an Amended Complaint against the Defendant, United States Department of Education ("United States"), seeking a discharge of her student loan indebtedness. At the conclusion of the trial and after the filing of a trial brief and reply by Ms. Greene and a response by the United States, the Court issued a Memorandum Opinion ("Opinion"), *Greene v. United States Department of Education* (*In re Greene*), 484 B.R. 98 (Bankr. E.D. Va. 2012) (hereinafter "*Greene*"), and entered an Order ("Order") on December 6, 2012, dismissing the Amended Complaint for the reasons set forth in the Opinion. On December 20, 2012, Ms. Greene filed a Motion to Reconsider ("Motion to Reconsider") and a combined Motion to Amend and for a New Trial ("Motion for New Trial"). On December 26, 2012, Ms. Greene filed a Supplement to the Motion to Reconsider ("Supplement"). (The Motion to Reconsider, the Motion to Amend, and the Supplement, along with the exhibits attached to each of these documents, are

collectively referred to herein as "the Motions.").

By order entered on January 2, 2013, the Court directed that the United States file any responses to the Motions on or before January 18, 2013. The order further provided that Ms. Greene would be entitled to file any further response or memorandum on or before January 30, 2013.[1]  On January 18, 2013, Ms. Greene filed an additional pleading entitled "Exhibits" ("January Exhibits"). Ms. Greene included with the January Exhibits a document entitled "Riverside Regional Discharge Instructions," dated January 18, 2013 ("Riverside Document"), which she believes constitutes a current diagnosis of her mental state.[2]  Ms. Greene apparently wishes the Court to consider the Riverside Document and the remainder of the January Exhibits as evidence related to the Motions. Additionally, on March 1, 2013, Ms. Green filed a document entitled "Affidavit"[3] ("Affidavit") in support of the Motions, wherein she states, "I do not feel capable of representing myself to file [the]

---

[1] On January 8, 2013, Ms. Greene filed a motion that, among other relief, prayed for an extension of time to reply to any response of the United States. The time for Ms. Greene to file a reply was extended to February 15, 2013; the remainder of the relief requested in the motion was denied. On February 11, 2013, Ms. Greene requested a second extension of time for the filing of a reply brief. Her request was granted by order entered February 12, 2013, and the deadline was extended to March 1, 2013.

On March 4, 2013, Ms. Greene filed a motion that the Court determined should be treated as a Motion for Interlocutory Appeal with regard to this Court's order dated March 1, 2013. The order entered March 1, 2013, denied Ms. Greene's motion, filed on February 22, 2013, that the Court reconsider an earlier order, which order denied Ms. Greene's previous motion to reconsider the denial of her requests for the appointment of an attorney and for an order directing her to undergo a mental examination. The Motion for Interlocutory Appeal was submitted to the United States District Court for the Eastern District of Virginia for a ruling pursuant to Federal Rule of Bankruptcy Procedure 8003(b). The United States District Court denied Ms. Greene's Motion for Interlocutory Appeal by order entered on April 8, 2013.

[2] Also attached to this pleading are a number of articles apparently obtained by Ms. Greene from the internet. These documents, along with the Riverside Document, are discussed in Section III.E., *infra*.

[3] The Affidavit is not notarized or authenticated.

2

Reply Brief because I know that I have chronic post-traumatic stress disorder and dissociative disorder." Affidavit at 1. Ms. Greene attached to the Affidavit additional supportive exhibits ("March Exhibits").[4]

Having now considered the Motions, exhibits, and the written arguments of Ms. Greene and the United States, the Court, by order dated April 22, 2013, denies the Motions for the reasons set forth herein. The Court decides the Motions without oral argument thereupon as the written submissions of Ms. Greene and the United States adequately set forth the arguments of the parties and oral argument of the Motions would not advance the decisional process of this Court.

## I.   The Motion to Reconsider

In the Motions, Ms. Greene seeks reconsideration of the Court's earlier judgment dismissing her Amended Complaint or, alternatively, the granting of a new trial so that she may adduce additional evidence in support of the Amended Complaint. Judge Moon reminds of the limitations of granting reconsideration:

> A court may reconsider a nonfinal judgment. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence," and because of the interest in finality, "courts should grant motions for reconsideration sparingly." *Dayoub v. Penn-Del Directory Co.*, 90 F. Supp. 2d 636, 637 (E.D. Pa. 2000) (citations and quotations omitted); *see also Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 402 F. Supp. 2d 617, 619 (M.D.N.C. 2005) ("A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence."); *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998) ("The major grounds justifying reconsideration of interlocutory orders

---

[4] The March Exhibits include: an undated statement from the Social Security Administration, entitled "Your Estimated Benefits"; the United States Department of Health & Human Services 2013 Poverty Guidelines; the United States Department of Health & Human Services Prior Poverty Guidelines for the years 1982-2012; e-mail correspondence between Ms. Greene and counsel for the United States; and an apparent draft version of Stipulation 1 of the parties with the handwritten notation "declined."

are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (citing *Pet. of U.S. Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973)).

A motion to reconsider may also be appropriate where the Court has misunderstood a party, has made a decision outside the adversarial issues presented by the parties, or has made an error of apprehension. *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). A controlling or significant change in the law or the facts also provides a potential basis for a motion for reconsideration. *Id.* A motion to reconsider is inappropriate where it merely reiterates previous arguments. *Id.* (denying a motion to reconsider that improperly "ask[ed] the Court to rethink what the Court had already thought through—rightly or wrongly").

*Univ. of Va. Patent Found. v. Gen. Elec. Co.*, 755 F. Supp. 2d 738, 743-44 (W.D. Va. 2011). Thus, the interests of finality and the conservation of judicial resources remain central considerations, since a motion for reconsideration is not an opportunity for a litigant "to present a better and more compelling argument than was originally presented." *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 402 F. Supp. 2d 617, 619 (M.D.N.C. 2005); *see also Katz v. Enter. Solutions, Inc.*, No. 1:04-CV-1240-JCC, 2005 WL 1871176, at *1 (E.D. Va. Aug. 5, 2005) (unreported decision). Remembering these principles, the Court considers the Motion to Reconsider.

A. Constitutional Arguments

In the Motion to Reconsider, Ms. Greene summarizes the constitutional issues raised therein as follows:

This motion raises the issue of whether barring plaintiff from hardship relief under 11 U.S.C. § 523(a)(8)(B) because she, as an indigent, has an assigned zero payment under the Income Contingent Plan[5] unfairly discriminates against the poverty-stricken, denies plaintiff full and equal benefit of the Bankruptcy [C]ode,

---

[5] The Income Contingent Plan is a federal student loan repayment option where the monthly repayment amount is calculated based upon the borrower's documented annual income, subject to annual adjustments in the monthly payment amount to account for changes in annual income. *See* Stipulation, ECF No. 53 ¶ 13 (hereinafter "Stipulation"). The term "Income Contingent Plan" is more fully defined in *Greene. See Greene*, 484 B.R. at 103 (quoting the terms of Ms. Greene's student loan repayment under the Income Contingent Plan as set forth in the Stipulation).

4

denies her equal protection under the law, and violates her rights to due process guaranteed by the Fifth Amendment of the [United States] Constitution.

Motion to Reconsider at 1; *see also* Affidavit ¶¶ 8-10, 12-13.  This argument was not raised by Ms.

Greene at trial or in any of her post-trial briefs until the Motion to Reconsider.  In the Motion to

Reconsider, Ms. Greene argues that due process requires that the Court consider whether the student

loan debt itself, not the monthly payment amount, imposes an undue hardship, even if the monthly

payment amount is zero:

> Plaintiff respectfully submits that while the zero payment is not undue hardship, the debt is- the debt of which plaintiff undisputedly has no hope of ever having the means to repay any portion is undue hardship as a debt which cannot be repaid, as explained below, traps an indigent in a cycle of poverty with bars akin to a debtor's prison.
>
> Plaintiff further respectfully submits that due process requires Fourth Circuit courts, in applying *Brunner*, to strictly adhere to the adopted standards in the Fourth Circuit and consider if the debt is an undue hardship, not if the payment of zero is. Those who are truly desperately poor and unable to ever repay their debt cannot fairly be denied equal benefit under the law because they are too poor to have an assigned payment greater than zero under the Income Contingent Repayment Plan. All citizens must have free and equal benefit of all laws.

Motion to Reconsider at 2.[6]  More specifically, Ms. Greene asserts that:

---

[6] The three-part test utilized in the Fourth Circuit for the determination of the dischargeability of student loan indebtedness, as adopted from *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987), is set forth as follows:

> The Fourth Circuit Court of Appeals has adopted the three-part test articulated in the decision of *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987).  *Educ. Credit Mgmt. Corp. v. Frushour* (*In re Frushour*), 433 F.3d 393, 400-01 (4th Cir. 2005) (adopting the *Brunner* test for determining dischargeability of student loans in cases filed under Chapter 7); *Ekenasi v. Educ. Res. Inst.* (*In re Ekenasi*), 325 F.3d 541, 546 (4th Cir. 2003) (adopting the *Brunner* test for determining dischargeability of student loans in cases filed under Chapter 13). Thus, in order to discharge a government-guaranteed student loan, a debtor "must establish (1) that he cannot maintain a minimal standard of living for himself and his dependents, based on his current income and expenses, if he is required to repay the student loans; (2) that additional circumstances indicate that his inability to

*Brunner,* as it was interpreted and applied by this Court in the Memorandum Opinion, resulted in a decision that patently and wholly precludes all indigent debtors from ever receiving hardship relief under 11 U.S.C. § 523(a)(8)(B) by virtue of the zero payments assigned to indigents under the Income Contingent Repayment Plan. Specifically, indigents, who are necessarily too poor to pay their debts and too poor to afford any payments under the Income Contingent Repayment Plan are assigned a zero payment - a payment which the Court determined was not undue hardship and therefore precluded relief under 11 U.S.C. § 523(a)(8)(B). The Court's far-reaching decision unfairly and absolutely relegates all indigents to administrative options, which as explained below, are separate, but not equal to the relief provided under the Bankruptcy [C]ode. Plaintiff respectfully submits that this cannot be correct: this disparate treatment conflicts with the principles of justice, fairness, and equality that are central to due process and are guaranteed by the Fourteenth and Fifth Amendments of the [United States] Constitution.

As equality and justice demands that all persons have full and equal benefit of all laws, no determination can properly categorically bar an entire class of people from a benefit under the law solely on the basis of poverty absent any compelling government interest or rational justification. Just as the Income Contingent Repayment Plan cannot categorically replace relief under 11 U.S.C. § 523(a)(8)(B) for all other debtors, the Income Contingent Repayment Plan cannot abolish relief under 11 U.S.C. § 523(a)(8)(B) for indigents.

Motion to Reconsider at 2-3.

### 1. Equal Protection Under the Law

The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that

---

do so is likely to exist for a significant portion of the repayment period of the student loans; and (3) that he has made good faith efforts to repay the loans." *In re Ekenasi*, 325 F.3d at 546 (quoting *Brunner*, 831 F.2d at 396).

*Burton v. Educ. Credit Mgmt. Corp.* (*In re Burton*), 339 B.R. 856, 869 (Bankr. E.D. Va. 2006). Ms. Greene's argument in the Motion to Reconsider addresses the Court's analysis under and its application of the first prong of the *Brunner* test, focusing primarily on the meaning of the phrase "if he is required to repay the loans." The analysis giving rise to the initial prong of the *Brunner* test was first articulated in the district court decision affirmed by the Second Circuit Court of Appeals, where Judge Haight explained, "[B]efore receiving a discharge of student loans the debtor is required to demonstrate that, given his or her current income and expenses, the necessity of making the monthly loan payment will cause his or her standard to fall below a 'minimal' level." *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 46 B.R. 752, 754 (S.D.N.Y. 1985), *aff'd*, 831 F.2d 395 (2d Cir. 1987).

"[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. The same standard for equal protection imposed upon the states by the Fourteenth Amendment is also required of the federal government pursuant to the Fifth Amendment to the United States Constitution.[7] *Schweiker v. Wilson*, 450 U.S. 221, 226 n.6 (1981) (citing *Weinberger v. Salfi*, 422 U.S. 749, 768-70 (1975); *Richardson v. Belcher*, 404 U.S. 78, 81 (1971)). As a preliminary matter, the Court observes that Ms. Greene's equal protection claims involve this Court's application of a federal statute and, therefore, do not implicate equal protection under the Fourteenth Amendment. *See Richardson*, 404 U.S. at 81. Thus, the Court will consider the merits of her equal protection claims in the context of the Fifth Amendment.

Recognizing the tension between the mandate of equal protection of the laws and the reality that most legislation requires classifications that may disadvantage certain groups or persons, the Supreme Court has determined that "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996) (citing *Heller v. Doe*, 509 U.S.

---

[7] The United States Supreme Court has observed that an identical analysis is employed with respect to equal protection claims under the Fifth and Fourteenth Amendments:

> "[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" *Schneider v. Rusk*, 377 U.S. 163, 168, 84 S. Ct. 1187, 1190, 12 L. Ed. 2d 218, 222 (1964); *see also Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S. Ct. 693, 694, 98 L. Ed. 884 (1954). This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment. *See, e.g.*, *Schlesinger v. Ballard*, 419 U.S. 498, 95 S. Ct. 572, 42 L. Ed. 2d 610 (1975); *Jimenez v. Weinberger*, 417 U.S. 628, 637, 94 S. Ct. 2496, 2502, 41 L. Ed. 2d 363, (1974); *Frontiero v. Richardson*, 411 U.S. 677, 93 S. Ct. 1764, 36 L. Ed. 2d 583 (1973).

*Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975).

312, 319-20 (1993)).    Thus, the applicable standard of review is dependent upon whether the

legislation abridges a fundamental right or results in the disparate treatment of a "suspect class."  As

this Court has previously emphasized, bankruptcy legislation neither interferes with any fundamental

rights nor affords unequal treatment to any groups recognized as "suspect classes":

> As Justice Blackmun has observed:
>
>> Bankruptcy is hardly akin to free speech or marriage or to those other
>> rights, so many of which are imbedded in the First Amendment that
>> the Court has come to regard as fundamental and that demand the
>> lofty requirement of a compelling governmental interest before they
>> may be significantly regulated.  Neither does it touch upon what have
>> been said to be the suspect criteria of race, nationality, or alienage.
>> Instead, bankruptcy legislation is in the area of economics and social
>> welfare.  This being so, the applicable standard, in measuring the
>> propriety of Congress' classification, is that of rational justification.
>
> *U.S. v. Kras*, 409 U.S. 434, 446, 93 S. Ct. 631, 34 L. Ed. 2d 626 (1973) (citations
> omitted).  Justice Blackmun succinctly summarized the absence of constitutional
> significance of the right of access to file a bankruptcy petition: "There is no
> constitutional right to obtain a discharge of one's debts in bankruptcy." *Id.*

*In re Watson*, 332 B.R. 740, 746-47 (Bankr. E.D. Va. 2005); *see also Perroton v. Gray* (*In re*

*Perroton*), 958 F.2d 889, 890 n.3 (9th Cir. 1992) (citing *United States v. Kras*, 409 U.S. 434, 444-46

(1973)) ("The *Kras* court also held that the requirement that the fee for filing a bankruptcy petition

be paid before discharge could be granted was not a denial of due process (or equal protection)

because the right to discharge in bankruptcy was not a fundamental right entitled to due process

under the Constitution."); *Beard v. A.H. Robins Co.*, 828 F.2d 1029, 1031 (4th Cir. 1987) ("It has

been held that Congress, in enacting bankruptcy legislation, has broad powers of classification

among claimants and debtors, limited only by the rule of 'rational justification.'"); *Dorrough v.*

*Estelle*, 497 F.2d 1007, 1011 (5th Cir. 1974) ("Recognizing the importance of the interests

concerned, the Supreme Court has nevertheless refused to accord welfare benefits, housing,

education, and discharge in bankruptcy preferred status under the equal protection clause.").

Justice Blackmun's clear statements in *Kras* that the discharge of indebtedness afforded

under the United States Bankruptcy Code is not a right protected by the Constitution and that such

legislation does not target any "suspect class" are complemented by his emphasis on the

methodology the Court must employ to analyze an equal protection challenge like that made by Ms.

Greene:  rational basis review.  *See Kras*, 409 U.S. at 446-48.  In performing rational basis review, a

court need only consider whether the lawmaking body classified individuals affected by the subject

law in such a way that the classification is rationally related to legitimate government objectives.

*See Schweiker*, 450 U.S. at 230; *see also Dandridge v. Williams*, 397 U.S. 471, 485 (1970).

Application of the rational basis standard has been explained by the Supreme Court:

> [T]he pertinent inquiry is whether the classification employed in § 1611(e)(1)(B)
> advances legitimate legislative goals in a rational fashion.  The Court has said that,
> although this rational-basis standard is "not a toothless one," *Mathews v. Lucas*, 427
> U.S. 495, 510, 96 S. Ct. 2755, 2764, 49 L. Ed. 2d 651 (1976), it does not allow us to
> substitute our personal notions of good public policy for those of Congress:
>
>> "In the area of economics and social welfare, a State does not violate
>> the Equal Protection Clause [and correspondingly the Federal
>> Government does not violate the equal protection component of the
>> Fifth Amendment] merely because the classifications made by its
>> laws are imperfect.  If the classification has some 'reasonable basis,'
>> it does not offend the Constitution simply because the classification
>> 'is not made with mathematical nicety or because in practice it results
>> in some inequity.'  *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S.
>> 61, 78 [31 S. Ct. 337, 340, 55 L. Ed. 369]." *Dandridge v. Williams*,
>> 397 U.S., at 485, 90 S. Ct., at 1161.
>
> The Court also has said:  "This inquiry employs a relatively relaxed standard
> reflecting the Court's awareness that the drawing of lines that create distinctions is
> peculiarly a legislative task and an unavoidable one.  Perfection in making the
> necessary classifications is neither possible nor necessary." *Massachusetts Bd. of
> Retirement v. Murgia*, 427 U.S. 307, 314, 96 S. Ct. 2562, 2567, 49 L. Ed. 2d 520
> (1976).  *See also United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 101
> S. Ct. 453, 66 L. Ed. 2d 368 (1980).  As long as the classificatory scheme chosen by

Congress rationally advances a reasonable and identifiable governmental objective, we must disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred.

*Schweiker*, 450 U.S. at 234-35; *see also Ackles v. A.H. Robins Co.* (*In re A.H. Robins Co.*), 59 B.R. 99, 104 (Bankr. E.D. Va. 1986) ("[T]he Court cannot say that Congress' provision for a broader discharge for corporations than for individuals is not rationally related to a legitimate governmental interest.").

Ms. Greene asserts that the Court's consideration of her monthly student loan payment of zero in applying the first *Brunner* prong unconstitutionally precludes her and other similarly situated debtors who are "too poor to have an assigned [monthly student loan] payment greater than zero" from receiving a discharge of student loan indebtedness pursuant to 11 U.S.C. § 523(a)(8).[8] Motion to Reconsider at 2; Affidavit ¶¶ 9, 12-13. The Court must employ rational basis review in evaluating Ms. Greene's claims that the Court's application of 11 U.S.C. § 523(a)(8) violates the principles of equal protection embodied in the Fifth Amendment because, not only is it well-settled that the discharge of debt in bankruptcy does not constitute a fundamental right, but also because the impoverished do not constitute a suspect class. *See Corbett v. Roberts*, No. 90-35316, 1991 WL 11584, at *2 (9th Cir. Jan. 31, 1991) (unpublished table decision) (citing *Ortwein v. Schwab*, 410 U.S. 656, 660 (1973); *Kras*, 409 U.S. at 446) ("*Kras* and *Ortwein* held the poor do not form a suspect class . . . ."); *Price v. City of Junction*, 711 F.2d 582, 591 n.6 (5th Cir. 1983) (citing *San*

---

[8] The Court observes that Ms. Greene's constitutional challenge to the Court's ruling is an "as-applied" challenge, based upon the Court's application of *Brunner* in its undue hardship analysis under 11 U.S.C. § 523(a)(8), rather than a facial challenge to the validity of the statute itself. Further, in analyzing the validity of Ms. Greene's constitutional challenge, the Court declines to address whether Ms. Greene has standing to assert the rights of similarly situated debtors, to the extend she seeks to vindicate the rights of these third parties.

*Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973)) ("Even were we to determine that the ordinance singled out the poor for different treatment, it would not trigger the higher standard of review—strict scrutiny—under the equal protection clause since the Supreme Court has refused to find the poor to be a suspect class."); *Riddle v. Caruso*, No. 2:10-cv-156, 2010 WL 3851960, at *7 (W.D. Mich. Sept. 27, 2010) (unreported decision) (citing *Harris v. McRae*, 448 U.S. 297, 323 (1980)) ("The poor are not considered a suspect class because poverty is a mutable characteristic[] unlike race or national origin.").

In the Motion to Reconsider, Ms. Greene argues that "there can be no rational reason that non-indigent debtors who cannot afford to repay their debts should be treated differently than indigent debtors who by virtue of their poverty cannot afford to pay their debt."  Motion to Reconsider at 4.  Ms. Greene elaborates on this point by asserting that "the argument that the desperately poor, who are too poor to have an assigned payment on the Income Contingent Repayment Plan above zero, have no need of the hardship relief under 11 U.S.C. § 523(a)(8)(B), but non-indigent debtors do, cannot pass the rational justification test." *Id.*; *see also id.* at 2.  She further contends that applying *Brunner* to indigent debtors in this manner relegates them to administrative options for the discharge of student loan debt, which she believes amounts to unequal treatment.  *Id.* at 2-3.

In *Greene*, this Court concluded that participation in the Income Contingent Plan did not in itself preclude a student loan discharge under the Bankruptcy Code:  "The Court agrees with Ms. Greene's argument in her Brief that participation or eligibility to participate in the Income Contingent Plan should not constitute a *per se* rule precluding discharge of student loans under Section 523(a)(8)." *Greene*, 484 B.R. at 115.  This Court applied the *Brunner* test to the particular

11

factual circumstances of Ms. Greene's case, as is done with every debtor who seeks a discharge of

student loan indebtedness in a court within the Fourth Circuit.  This Court did not apply any "*per se*"

rule; rather, it determined that Ms. Greene's present factual circumstances, including a monthly

contractual payment of zero on her student loan, did not impact her present ability to maintain a

minimal standard of living.  Thus, the Court ruled that Ms. Greene had not sustained her burden

under the first prong of the *Brunner* test.  *Id.* at 120.

Even if this Court's interpretation of the impact of a zero payment under the Income

Contingent Plan upon the first prong of the *Brunner* test would effectively preclude all similarly

situated debtors from a discharge of student loan indebtedness pursuant to 11 U.S.C. § 523(a)(8), it

would not deny these debtors the United States Constitution's guarantee of equal protection because

such preclusion is rationally related to a legitimate government objective.  As Judge Stocks has

observed, the *Brunner* test exists to effectuate the congressional intent underlying 11 U.S.C. §

523(a)(8):

> [T]he *Brunner* standard upholds the congressional intent of safeguarding the
> financial integrity of the student loan program by not permitting debtors who have
> obtained the benefits of an education funded by taxpayer dollars to dismiss their
> obligation merely because repayment would require some major personal and
> financial sacrifices.

*Matthess v. U.S. Dep't of Educ.* (*In re Matthess*), No. 98-12955C-7G, 99-9029, 2000 WL 33673763,

at *2 (Bankr. M.D.N.C. Feb. 4, 2000) (unpublished decision) (citing *Pa. Higher Educ. Assistance

Agency v. Faish* (*In re Faish*), 72 F.3d 298, 305-06 (3rd Cir. 1995)); *see also Todd v. Access Grp.,

Inc.* (*In re Todd*), 473 B.R. 676, 687 (Bankr. D. Md. 2012) (citing *Educ. Credit Mgmt. Corp. v.

Polleys*, 356 F.3d 1302, 1306 (10th Cir. 2004); *Brunner*, 46 B.R. at 755) ("The undue hardship

standard is intended to safeguard the student loan program from abusive borrowers.").  The first

*Brunner* prong requires courts to consider the current amount of the monthly student loan payment and its present impact on the ability of the debtor and his or her dependents to maintain a minimal standard of living. *See Brunner*, 46 B.R. at 755. It is axiomatic that a debtor who does not currently maintain a minimal standard of living would satisfy the first prong of the *Brunner* test. *See In re Todd*, 473 B.R. at 687 (citing *Ammirati v. Nellie Mae, Inc.* (*In re Ammirati*), 187 B.R. 902, 907 (D.S.C. 1995), *aff'd*, 85 F.3d 615 (4th Cir. 1996)). However, in *Greene*, this Court found that, based upon her testimony at trial, Ms. Greene and her dependent maintain a minimal standard of living and was therefore required to consider the impact of her monthly student loan payment on her ability to maintain such minimal standard of living. *Greene*, 484 B.R. at 110. The Court determined that Ms. Greene could not establish that she would be unable to maintain minimal standard of living for herself and her dependent if required to repay her student loan indebtedness because her contractual monthly student loan payment of zero necessarily had no impact on her standard of living. *Id.* at 120. That a debtor who maintains a minimal standard of living, such as Ms. Greene, is precluded from satisfying the first *Brunner* prong and obtaining a discharge of student loan indebtedness under the Bankruptcy Code because he or she voluntarily participates in a regulatory program whereby the monthly student loan payment is fixed at zero—an amount that has no impact on the debtor's standard of living—is wholly consistent with the legislative aim of maintaining the integrity of the federal student loan program by limiting the discharge of student loan indebtedness under 11 U.S.C. § 523(a)(8) only to those debtors for whom repayment creates an undue hardship. Therefore, because the Court has applied the first *Brunner* prong consistently with the legitimate governmental purpose underlying 11 U.S.C. § 523(a)(8), the Court finds that Ms. Greene's equal protection claims must be dismissed as a basis for reconsideration.

13

## 2. Due Process Under the Law

It is unclear exactly how Ms. Greene contends that a violation of her procedural due process rights under the United States Constitution occurred here. *See* Motion to Reconsider at 1, 6, 11. If Ms. Greene is asserting a violation of her right to procedural due process under the Fifth Amendment, this argument is unavailing. To succeed on a procedural due process claim, a plaintiff must show "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009) (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)). Judge Michael has explained the absence of a liberty or property interest in a bankruptcy discharge:

> Debtor also alleges that to except Davis' debt from discharge under § 523(a)(15) would be a deprivation of his constitutionally protected liberty and property rights, and thus a violation of his right to due process under the U.S. Constitution. In fact, he seems to suggest that the exception of any debt from discharge, and hence any application of § 523, would be unconstitutional. While sections of the Bankruptcy Code should ordinarily be construed to avoid treatment of constitutional questions, the Debtor's broad allegations require the Court to face the issue of constitutionality head on.

> The Fifth Amendment protects citizens against government actions that deprive them of "life, liberty, or property without due process of law." Procedural due process ensures that the government will not deprive a party of life, liberty, or property without engaging in fair procedures; substantive due process ensures that the government will not deprive a party of life, liberty, or property for an arbitrary reason regardless of the procedures used to reach that decision. In order to prevail on either a procedural or substantive due process claim, Debtor must first establish that he has been deprived of a constitutionally protectable property or liberty interest.

> The Supreme Court defines "property" in the context of the Fourteenth Amendment's due process clause as a "legitimate claim of entitlement" to some benefit. An abstract need for, or unilateral expectation of, a benefit does not constitute "property." Due process is not an end in itself. Rather, the constitutional purpose of due process "is to protect a substantive interest to which . . . [a party] has a legitimate claim of entitlement." Contrary to the strong assertions of the Debtor,

14

the Supreme Court has long held that "[t]here is no constitutional right to obtain a discharge of one's debts in bankruptcy," because "no fundamental interest is gained or lost depending on the availability of a discharge." Because federal law does not create a protected property or liberty interest in the receipt of a discharge of one's debts in bankruptcy, Debtor has not stated an interest on which to base his due process claim.

*Davis v. Hosterman* (*In re Hosterman*), Adv. No. 07-01082-M, 2007 WL 2973592, at *4-5 (Bankr.

N.D. Okla. Oct. 9, 2007) (unreported decision) (footnotes omitted).

As no liberty or property interest is implicated here, "the question of what process is required

. . . is irrelevant, for the constitutional right to 'due process' is simply not implicated." *Stone*, 855

F.2d at 172. As such, no violation of procedural due process occurred here. Ms. Greene has been

afforded all of the requisite procedural safeguards and has been given ample opportunity to fairly

present the merits of her Amended Complaint. As Judge Michael has further explained:

> Even if a federally protected property or liberty interest were established, any denial of that interest did not violate due process in this case. With respect to procedural due process, Debtor was served with the complaint in this action, was given the opportunity to and did file an answer to the complaint, and filed a response to Davis' motion for summary judgment. Debtor has not identified what additional process he feels he should have been provided. A mere negative outcome resulting from the application of the Code to his debt does not create a procedural due process violation.

*In re Hosterman*, 2007 WL 2973592, at *5. Accordingly, for these reasons, any claim by Ms.

Greene of a violation of her right to due process in these proceedings is unfounded.

B.  Reconsideration of the Court's Conclusion that
Ms. Greene Failed to Satisfy the First Prong of the *Brunner* Test

As previously set forth, the grounds for reconsideration are narrow: to correct an error of law

or fact; to present newly discovered evidence that was not available at the time of trial; or because a

change in the controlling law has occurred in the intervening time period. *Univ. of Va. Patent*

*Found. v. Gen. Elec. Co.*, 755 F. Supp. 2d 738, 743-44 (W.D. Va. 2011). Reconsideration does not

afford a litigant the opportunity to make new arguments that could have been previously raised, nor

does it provide a litigant a second opportunity to reiterate arguments that were previously made.  *See*

*id.*; *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 402 F. Supp. 2d 617, 619 (M.D.N.C.

2005).  In the Motion to Reconsider, Ms. Greene reasserts the arguments she first raised in her post-

trial brief and reply brief, filed with the Court on September 28, 2012, and October 19, 2012,

respectively.[9]  The Court previously gave great consideration to all of these arguments and rejected

---

[9] These arguments consist of Ms. Greene's attempts to convince the Court that it should consider, in the context of the first *Brunner* prong, that her standard of living falls below the minimal standard required by the *Brunner* test, Motion to Reconsider at 4; that her standard of living has been very low for quite some time, *id.*; and that her student loan balance continues to increase because her monthly payment is zero, thereby impacting her credit rating and leading to possible negative inferences being drawn by potential employers and/or housing agencies, Motion to Reconsider at 4, 8-10, and exhibits attached thereto; Affidavit at 3-4.  Ms. Greene also argues that the decision in *Geyer v. United States Department of Education* (*In re Geyer*), 344 B.R. 129 (S.D. Cal. 2006), "employs an alternative type of analysis to the one required in the Fourth Circuit, which strictly construed requires, on the first prong of *Brunner*, an analysis specifically of whether the debtor has a current inability to repay the debt."  Motion to Reconsider at 8.  The *Geyer* court applied the elements of the *Brunner* test:

> A debtor must prove three elements to obtain discharge of a student loan obligation:
>
> > (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living . . . if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*In re Geyer*, 344 B.R. at 131 (quoting *Rifino v. United States* (*In re Rifino*), 245 F.3d 1083, 1087 (9th Cir. 2001)).  Further, the court in *In re Geyer* expressly concluded the debtor there could not establish what is the first prong of *Brunner*:

> Excluding the student loans from discharge does not impose any hardship on Debtors, since, by virtue of the Income Contingent Repayment Plan, they are not required to make any payments at all.  Accordingly, they cannot show that they cannot maintain a minimal standard of living if the loans are not discharged.  *See Rifino*, 245 F.3d at 1087.  For the same reason, they cannot show that the loans would preclude them from maintaining a minimal standard of living for a significant

them. *See Greene*, 484 B.R. at 109-20.  The Court believes it adequately explained its conclusions

as to the first prong of *Brunner* in the Opinion, and a further reiteration here of this reasoning does

not advance the decisional process.

Ms. Greene also suggests that the Court misconstrued, and, as a result, misapplied, the

holdings of *In re Frushour* and *Brunner*: "[D]ue process requires Fourth Circuit courts, in applying

*Brunner* to strictly adhere to the adopted standards in the Fourth Circuit and consider if the debt is

undue hardship, not if the payment of zero is."  Motion to Reconsider at 2; *see also* Motion to

Reconsider at 5 ("[T]here is no legal precedence [*sic*] in the Fourth Circuit to substitute the adopted

analysis for an alternative one that calls for instead determining whether the zero repayment affects

the debtor's ability to maintain a minimal standard of living.").  While this argument could be

construed as one that could have been previously raised and/or a reiteration of her previous

arguments, and, thus, improper at this stage of the proceedings, to the extent this argument is made

to correct a possible error of law, the Court will address it.

Ms. Greene misapprehends the requirement of the first prong of the *Brunner* test, which

requires the debtor to establish, by a preponderance of the evidence, that she "cannot maintain, based

on current income and expenses, a 'minimal' standard of living for herself and her dependents if

forced to repay the loans . . . ."  *Educ. Credit Mgmt. Corp. v. Frushour* (*In re Frushour*), 433 F.3d

_____

portion of the remaining repayment period.  *See id.*

*Id.* at 133.  In reaching this conclusion, the *Geyer* court, like the Court here, considered the debtors'
present factual circumstances, including the monthly payment amount, and the impact of those
circumstances on their ability to maintain a minimal standard of living. *See id.* at 132-33; *Greene*,
484 B.R. at 110, 115-20.  Thus, as with Ms. Greene's attempts in her brief and reply brief filed
following the trial, the Court again rejects her attempts to distinguish the facts and outcome in *Geyer*
from the facts and outcome in the instant matter.

393, 400 (4th Cir. 2005) (quoting *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)).   This analysis, as explained in *Greene*, requires the Court to examine the debtor's current income, whether the debtor has minimized her expenses, and the debtor's current standard of living, all in relation to her current, contractual student loan payment. *Greene*, 484 B.R. at 109-10.   The first *Brunner* prong thus requires an examination of a debtor's *current* circumstances. *Brunner*, 831 F.2d at 396; *see also Greene*, 484 B.R. at 115.   This concept is reinforced in the context of the second *Brunner* prong, which requires a court to consider whether a debtor has demonstrated that additional circumstances exist such that her *present* inability to pay is likely to persist for a significant portion of the repayment period. *In re Frushour*, 433 F.3d at 401 (citing *U.S. Dep't of Educ. v Gerhardt* (*In re Gerhardt*), 348 F.3d 89, 92 (5th Cir. 2003)) ("[T]he second *Brunner* factor is prospective in nature and looks for exceptional circumstances beyond the debtor's current situation."); *see also Greene*, 484 B.R. at 115.[10]   Thus, whatever a debtor's circumstances, the Court must consider them in their current state under the first *Brunner* prong, including the amount of the debtor's current, required student loan payment.

In a second effort to convince the Court that it should have focused its analysis under the first *Brunner* prong on whether she will ever be able to repay the debt, Ms. Greene argues that the Court should not have considered her present contractual monthly repayment amount on her student loan of zero to be a payment at all.   "To repay a debt, the debt must necessarily be reduced.   A zero payment does not repay a debt.   The debt remains and grows."   Motion to Reconsider at 5; *see also id.* at 6 (quoting *Greene*, 484 B.R. at 120), 9 ("Plaintiff respectfully submits that, like deferment and

---

[10] The Court reminds that all three prongs of the *Brunner* test must be met in order for a student loan debt to be discharged. *In re Frushour*, 433 F.3d at 400.

forbearances, a zero payment is not a payment at all."). Ms. Greene expounds upon this specific point in her Supplement, filed with the Court on December 26, 2012 ("Supplement").

In the Supplement, Ms. Greene urges this Court to reconsider its conclusion that she failed to sustain her burden of proof as to the first *Brunner* prong by citing a decision of the Alexandria Division of this Court, *Braun v. Sallie Mae* (*In re Braun*), Adv. No. 11-01529, 2012 WL 5199163 (Bankr. E.D. Va. Oct. 19, 2012) (unpublished decision) (hereinafter "*Braun*"). *Braun* was decided on October 19, 2012, after the trial on the Amended Complaint but prior to the issuance of the Memorandum Opinion on December 6, 2012. This Court became aware of the decision in *Braun* while drafting the Memorandum Opinion and considered its reasoning in concluding that Ms. Greene had failed to carry her burden of proof as to the first *Brunner* prong. *Greene*, 484 B.R. at 115 n.13.[11]

---

[11] In *Greene*, this Court distinguished *Braun* as follows:

> In a recent student loan dischargeability case, the United States Department of Education argued that the debtor there could maintain a minimal standard of living because he was eligible for either the Income Contingent Plan or the Income Based Repayment Plan and, under either plan, his prescribed payment *would be* zero. *Braun v. Sallie Mae* (*In re Braun*), Adv. No. 11-01529, 2012 WL 5199163, at *6 (Bankr. E.D. Va. Oct. 19, 2012) (unpublished decision). No such factual assumption needs to be made in the instant matter, as Ms. Greene *is currently* participating in the Income Contingent Plan and has done so since obtaining the Student Loan in 2004. Stipulation ¶¶ 9-12. Thus, the Court's consideration of Ms. Greene's *current* contractual monthly payment of zero under that repayment plan is not only proper, but necessary, as the first *Brunner* prong requires examination of the debtor's *current* monthly student loan payment, *not* a hypothetical amount. *Brunner v. N.Y. State Higher Educ. Servs. Corp.* (*In re Brunner*), 46 B.R. 752, 754 (S.D.N.Y. 1985), *aff'd*, 831 F.2d 395 (2d Cir. 1987) ("[B]efore receiving a discharge of student loans the debtor is required to demonstrate that, given his or her *current* income and expenses, the necessity of making *the monthly loan payment* will cause his or her standard of living to fall below a 'minimal' level.") (emphasis added).

*Greene*, 484 B.R. at 115 n.13.

19

First, as stated in *Greene*, the distinct factual circumstances of *Braun* make its legal conclusions inapplicable to the Court's analysis under the first prong of *Brunner* in this matter. Here, Ms. Greene's contractual monthly payment of zero was in fact the circumstance at the time of trial, unlike the debtor in *Braun* who was not participating in the Income Contingent Plan or a similar repayment plan.[12] Thus, the *Braun* court's consideration of an indeterminate regular monthly payment amount and the impact of the same is irrelevant in Ms. Greene's case.

Further relying upon the court's reasoning in *Braun*, Ms. Greene contends that her contractual monthly student loan payment of zero under the Income Contingent Repayment Plan does not constitute repayment of her student loan indebtedness, thereby requiring this Court to consider the effect of an "actual" monthly payment of some amount greater than zero to give meaning to the language "if forced to repay the loans" contained in the first *Brunner* prong. *See* Supplement at 2-4. However, Ms. Greene's argument that her present student loan payment of zero equates to not being required to repay the student loan indebtedness neglects to consider that her monthly payments of zero are not nullities. Rather, Ms. Greene's student loans remain in active repayment status, Stipulation ¶ 20. Each monthly payment of zero is applied toward the 300 monthly payments (over at least 25 years) she must make to be eligible for the forgiveness of any outstanding balance of the student loan indebtedness under the Income Contingent Plan, Stipulation ¶¶ 13, 19.[13] Thus, Ms. Greene's contractual monthly payments of zero have the effect of keeping

---

[12] The debtor in *Braun* was in default of his student loan repayment obligation, having not made a payment on his student loan indebtedness since June 2011. *Braun*, 2012 WL 5199163, at *4. The amount of the debtor's monthly student loan payment at the time of the filing of his complaint was not disclosed in *Braun*.

[13] As of the time of the trial, Ms. Greene had approximately 207 monthly payments remaining to be eligible for forgiveness of the loan balance. Stipulation ¶ 23.

her loan obligation current during repayment and reducing the remaining repayment term.  The

Court therefore believes that it is improper to conflate Ms. Greene's voluntary participation in a

student loan *repayment* program, such as the Income Contingent Plan, under which her contractual

monthly payment amount is presently fixed at zero, with not being required to repay the student loan

indebtedness.  Accordingly, it was (and remains) appropriate for the Court to consider Ms. Greene's

current monthly student loan payment of zero in performing the undue hardship analysis required

under the first *Brunner* prong.  The reality of Ms. Greene's present circumstance is that, by virtue of

her participation in the Income Contingent Plan, under which her monthly payment amount is

currently fixed at zero, the repayment of her student loan indebtedness simply has no impact on her

ability to maintain a minimal standard of living.

In any event, for the reasons set forth in *Greene*, this Court continues to believe that Ms.

Greene did not carry her burden of proof as to the first *Brunner* prong, and the Court declines to

reconsider its decision accordingly.

## II.  The Motion to Amend

Motions to amend findings of fact in a bankruptcy proceeding are governed by Federal Rule

of Bankruptcy Procedure 7052, which incorporates Federal Rule of Civil Procedure 52.  Rule 52

permits a party to "question the sufficiency of the evidence supporting the findings, whether or not

the party requested findings, objected to them, moved to amend them, or moved for partial findings."

 Fed. R. Civ. P. 52(a)(5).  A motion to amend findings of fact must be filed within fourteen (14) days

after entry of a judgment, Fed. R. Bankr. P. 7052, and permits a court to amend its findings and/or

make additional findings, and, if appropriate, to amend the judgment accordingly, Fed. R. Civ. P.

52(b).  Whether to amend factual findings is a decision that lies within with trial court's discretion.

21

*United States v. Anderson*, 591 F. Supp. 1, 4 (E.D. Wash. 1982). Like a motion to reconsider,

motions to amend factual findings pursuant to Rule 52 are not intended to provide litigants an

opportunity to relitigate the matter at hand. *Wahler v. Countrywide Home Loans, Inc.*, Civil No.

1:05CV349, 2006 WL 3327074, at *1 (W.D.N.C. Nov. 15, 2006) (unreported decision) (citing

*Evans, Inc. v. Tiffany & Co.*, 416 F. Supp. 224, 244 (N.D. Ill. 1976)). The proper grounds for a

motion to amend resemble those required for a motion to reconsider: to correct a manifest error of

law or fact; to consider newly discovered evidence; to account for an intervening change in law; or

to supplement or amplify factual findings. *See Wal-Mart Stores, Inc. v. El-Amin* (*In re El-Amin*),

252 B.R. 652, 654 (Bankr. E.D. Va. 2000); *see also Wahler*, 2006 WL 3327074, at *1 (citing *Evans,

Inc. v. Tiffany & Co.*, 416 F. Supp. 224, 244 (N.D. Ill. 1976)); *Dow Chem. Pac. Ltd. v. Rascator

Mar. S.A.*, 609 F. Supp. 451, 452-53 (S.D.N.Y. 1984); *Anderson*, 591 F. Supp. at 4. Predictably, the

burden rests upon the moving party to show not only that an error occurred, but that the error was

harmful; if the error did not affect the outcome, then a court need not amend its findings. *Anderson*,

591 F. Supp. at 4. Finally, findings of fact should only be supplemented if doing so will provide an

appellate court with a better understanding of the factual predicate for the trial court's ruling. *Filner

v. Shapiro*, 83 F.R.D. 630, 631 (S.D.N.Y. 1979).

　　Ms. Greene sets forth several factual findings from the Court's earlier opinion in this matter

that she believes should be amended. In her Motion to Reconsider (discussed *supra*),[14] Ms. Greene

requests the Court amend its findings of fact in *Greene* "to indicate that plaintiff has a sub-minimal

standard of living." Motion to Reconsider at 4 n.1. In support of this contention, Ms. Greene argues

---

[14] Despite the fact that this particular request to amend the Court's findings of fact was raised in the Motion to Reconsider, the Court will nonetheless consider it here.

that "income below the federal poverty measures constitutes a sub-minimal standard of living[,] not a minimal standard of living . . . ." *Id.* Ms. Greene, neither in or accompanying her Motion to Reconsider nor her Motion for New Trial, provides any evidence or further reasoning to support this request, and, thus, it must be denied.

Similarly, Ms. Greene seeks an amendment of the Court's finding that "during a majority of the last nine (9) years, she has consistently earned less income than delineated by the federal poverty levels; and her income has never exceeded her necessary expenses." *Greene*, 484 B.R. at 127 (citing Plaintiff's brief and reply brief filed following the trial). Ms. Greene insists the finding should reflect that "[P]laintiff has *always* earned way below the federal poverty levels," asserting that this fact is "undisputed." Motion for New Trial at 9-10 (emphasis added). As pointed out by the United States, Ms. Greene failed to introduce into evidence the federal poverty guideline levels for years other than 2012. Defendant's Response to Motion for New Trial at 5 (hereinafter "Response to Motion for New Trial"); *see* Stipulation ¶ 28. To be sure, the parties stipulated that Ms. Greene's adjusted gross income since her student loan entered repayment has been below the federal poverty guidelines, *see* Stipulation ¶ 20; however, beyond this stipulation, no evidence is in the record to substantiate what those levels were. Therefore, Ms. Greene's request on this point must be denied.

Ms. Greene further requests that the Court amend its finding that "Ms. Greene believes that she will never be able to earn income sufficient to permit her to pay the Student Loan in full." *Greene*, 484 B.R. at 106 (citing Trial Transcript at 12, 31 (hereinafter "Tr.")). She asserts that a more accurate factual finding in this regard should indicate that "[Ms. Greene] believes that she will never be able to afford to *reduce any portion of her debt at all*." Motion for New Trial at 3 n.7 (emphasis added) (citing Plaintiff's brief and reply brief filed following the trial). Even if this Court

were to amend its factual findings to so reflect Ms. Greene's outlook regarding her ability to repay, in full or in part, her student loan debt, the Court's ultimate decision with regard to the dischargeability of Ms. Greene's student loan would remain the same.

Citing *Spence v. Educational Credit Management Corp.* (*In re Spence*), 541 F.3d 538, 544 (4th Cir. 2008), and *United States Department of Health & Human Services v. Smitley* (*In re Smitley*), 347 F.3d 109, 117 (4th Cir. 2003), Ms. Greene asks the Court to amend its findings and conclusions so as to emphasize how her circumstances are distinguishable from the debtors in the noted cases, and, thus, that her student loan debt should be discharged. Motion for New Trial at 8-9. The Court cited *In re Spence* to expound upon the considerations necessary under the second prong of the *Brunner* test, *see Greene*, 484 B.R. at 120, 128, and to emphasize the high evidentiary bar debtors face in seeking a discharge of their student loan indebtedness, *id.* at 133. Similarly, the Court discussed the *Smitley* opinion in setting forth the requirements under the first *Brunner* prong, *id.* at 109, but specifically noted that dischargeability of the type of loans at issue in that case (Health Education Assistance Loans) required a finding of unconscionability, thus making the holding of *Smitley* inapplicable to the instant matter. *See id.* at 119 n.18. To the extent that Ms. Greene seeks amendment of the factual findings to set forth a comparison of her circumstances to those facing the debtors in those cases, she does not offer any reasoning or evidence as to why such an amendment would further her cause and satisfy her burden pursuant under the Rule 52 standards. Thus, the Court must deny this request.

Finally, in the conclusion to her Motion for New Trial, Ms. Greene "requests the Court amend the Court's Findings of Fact relating to [P]laintiff's mental health issues, medical records, employment search, and income as described herein whether or not doing so will alter the judgment

24

dismissing Plaintiff's Amended Complaint." Motion for New Trial at 10. As these requests for amendments to the Court's findings of fact and/or conclusions of law are dependent upon the extent to which Ms. Greene's Motion for New Trial is granted and the extent to which she would be permitted to proffer additional evidence into the record, those requests will be addressed in that section, *infra*.[15]

### III. Motion for New Trial

Ms. Greene has timely moved for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, as incorporated in Rule 9023 of the Federal Rules of Bankruptcy Procedure.[16] Ms.

---

[15] *See* note 27, *infra*.

[16] Federal Rule of Civil Procedure 59 provides in pertinent part:

(a) In General.

  (1) *Grounds for New Trial.* The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:

   (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

   (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

  (2) *Further Action After a Nonjury Trial.* After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

(b) Time to File a Motion for a New Trial. A motion for a new trial must be filed no later than 28 days after the entry of judgment.

(c) Time to Serve Affidavits. When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being

Greene seeks the Court to consider the introduction of the medical records appended to her Motion

for New Trial, testimony of an individual who has reviewed such records, documentation related to

her prior residence at a domestic violence shelter, and employment search records ("New

Documents").[17] *Id.* at 1-3.  Ms. Greene states the following in support of her Motion for New Trial:

> The evidence attached in support of this motion includes just attained medical
> and mental health documents and records.  These documents and records show that
> plaintiff has been diagnosed with chronic post-traumatic stress disorder, dissociative
> disorder, panic attacks and nightmares, traumatic brain injury, and problems with
> memory loss.  The documents and records further specifically indicate adjustment
> problems interfering with plaintiff's ability to interview and compete for a job and

---

> served to file opposing affidavits.  The court may permit reply affidavits.

> (d) New Trial on the Court's Initiative or for Reasons Not in the Motion.  No later
> than 28 days after the entry of judgment, the court, on its own, may order a new
> trial for any reason that would justify granting one on a party's motion.  After
> giving the parties notice and an opportunity to be heard, the court may grant a
> timely motion for a new trial for a reason not stated in the motion.  In either
> event, the court must specify the reasons in its order.

> (e) Motion to Alter or Amend a Judgment.  A motion to alter or amend a judgment
> must be filed no later than 28 days after the entry of the judgment.

Fed. R. Civ. P. 59.  Pursuant to Federal Rule of Bankruptcy Procedure 9023, the twenty-eight (28)
day deadlines set forth in subsections (b), (d), and (e) of Federal Rule of Civil Procedure 59 are
reduced to fourteen (14) days in cases under the Bankruptcy Code.

[17] In the Motion for New Trial, Ms. Greene requests that she "be permitted to submit . . .
professional conclusions" to the Court of Ms. Felicia Powell, who Ms. Greene identifies as being
affiliated with DQS Behavioral Healthcare Group in Hampton, Virginia.  *See* Motion for New Trial
at 2.  Ms. Greene further indicates that she "has requested written conclusions from Ms. Powell."  *Id.*
at n.4.  On this discrete issue, Ms. Greene requests the Court determine "whether live, expert witness
testimony is necessary in *pro se* indigent cases such as the instant case where the cost would
constitute an undue financial burden, and, if so, if plaintiff would then have an opportunity to
provide such testimony for the evidentiary record of this case."  *Id.* at n.5; *see also* Affidavit at 8
(noting her request for a determination as to whether expert testimony was needed).  Whether or not
proceeding *pro se*, it is a litigant's prerogative, as a matter of trial strategy, to present evidence at
trial through the testimony of lay or expert witnesses.  Thus, regardless of the Court's ultimate ruling
on the Motion for New Trial, it is not within the Court's purview to speculate or offer any guidance
as to the sufficiency or necessity of any element of Ms. Greene's proposed evidentiary presentation.

return to the workplace.  Plaintiff, unable to overcome these problems, has lived a life in immense poverty, never able to attain any secure or lucrative employment.

Further in support of this motion, plaintiff states that Felicia Powell, DQS Behavioral Healthcare Group, Hampton, Virginia, has reviewed plaintiff's medical and mental health records and has evaluated plaintiff.  This practice has substantial experience in providing expert witness testimony in cases involving trauma from sexual abuse.  Plaintiff respectfully requests that she be permitted to submit Ms. Powell's professional conclusions to this Court.

Further in support of this motion, plaintiff submits a document prepared by the legal counsel of a domestic violence shelter where plaintiff lived which indicates the type of services plaintiff received and explains that records for such programs are generally not released except in very narrow circumstances not encompassing any action, suit, or other judicial, legislative, or administrative proceeding.  Specifically, because of the confidentiality of information provided by crime victims to crisis intervention counselors for victim services programs enacted under federal statute, such programs generally do not release records.  Consequently, plaintiff is unable to provide records for counseling or support services from crisis intervention or domestic violence shelter programs or services.

The evidence in support of this motion also includes a copy of plaintiff's job search file referenced in this Court's Order Denying Amended Complaint.

Motion for New Trial at 1-3 (footnotes omitted).[18]

---

[18] Ms. Greene further represents that she "anticipates receiving additional records." Motion for New Trial at 1 n.1.  On this point, Ms. Greene "requests that she be able to provide any additional medical evidence attained within a reasonable time frame." *Id.* at 2 n.6.  In support of this request, Ms. Greene asserts that *Robinson v. Educational Credit Management Corp.* "indicat[es] that if [a] *pro se*, low-income debtor is later able to obtain medical corroboration, she may seek relief under Rule 9024, Federal Rules of Bankruptcy Procedure, which incorporates Rule 60, Federal Rules of Civil Procedure, from the judgment dismissing her complaint." *Id.* (citing *Robinson v. Educ. Credit Mgmt. Corp.* (*In re Robinson*), 416 B.R. 275 (Bankr. E.D. Va. 2009)).  To the extent Ms. Greene believes she would be *entitled* to such relief, the Court agrees with the observation of the United States that "*Robinson* merely stated that the debtor in that case could seek relief; it did not grant such relief and was not faced with the issue of whether medical evidence was newly discovered." Response to Motion for New Trial at 8 n.6.  To the extent the evaluation performed by Felicia Powell of DQS Behavioral Healthcare Group and/or the January Exhibits are the "additional records" to which Ms. Greene refers, the Court will address whether such documents are sufficient to support the relief requested in Sections III.C. and III.E., *infra*.  To the extent the "additional records" constitute documents that have not been filed with the Court, the Court must deny Ms. Greene's request because, in the absence of such records, Ms. Greene cannot sustain her burden to prove that the "additional records" satisfy the standard governing relief on the basis of newly

The proper grounds for a motion filed pursuant to Federal Rule of Civil Procedure 59 are similar to those for a motion for reconsideration or a motion to amend findings of fact (discussed *supra*).  The Fourth Circuit Court of Appeals has "recognized that there are three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  *Pacific Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citing *Equal Employment Opportunity Comm'n v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997); *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993)).

The Fourth Circuit Court of Appeals has previously addressed the standard to be imposed in the evaluation of a Rule 59 motion on the grounds of newly discovered evidence:

> The standard for granting a Rule 59 motion based on newly discovered evidence is high.  The moving party must show:
>
> > (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.
>
> *Boryan*, 884 F.2d at 771 (citing Fed. R. Civ. P. 60).
>
> . . . .
>
> [T]o support a motion for reconsideration, the movant is obliged to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing . . . .  Evidence that is available to a party prior to entry of judgment, therefore, is not a basis for granting a motion for reconsideration as a

---

discovered evidence.

matter of law.

*Boryan*, 884 F.2d at 771 (quotations and citations omitted).

*Quillin v. C.B. Fleet Holding Co.*, 328 F. App'x 195, 203, 2009 WL 1336719, at *7-8 (4th Cir. 2009)

(unpublished decision).[19]   Other limitations on the use of a motion for a new trial have been

recognized by courts within the Fourth Circuit:

> A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments
> or present evidence that could have been raised prior to the entry of judgment."
> *Westinghouse Savannah River Co.*, 305 F.3d at 290 (quoting 11 Wright, *et al.*, *supra*,
> § 2810.1, at 127-28).  Second, in order to rely on newly discovered evidence as the
> basis for his Rule 59(e) motion, Plaintiff "must produce a 'legitimate justification for
> not presenting' the evidence during the earlier proceeding."  *Small v. Hunt*, 98 F.3d
> 789, 798 (4th Cir. 1996) (quoting *RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658, 662
> (4th Cir. 1992)).

*Johnson v. Hendrick Auto. Grp.*, No. 3:10-cv-109-W, 2011 WL 6032706, at *3 n.2 (W.D.N.C. Dec.

5, 2011) (unreported decision).

## A.   The Medical Records

In her Motion for New Trial, Ms. Greene offers little explanation for her inability to present

at trial the medical records she now seeks the Court to consider:

> Plaintiff's [*sic*] has had a difficult history dating back for many years prior to
> the loan consolidation at issue in the instant action, and so it was unclear to plaintiff,
> prior to trial, the scope of evidence that would be admissible.  At first, the scope
> seemed narrow as plaintiff's position relied solely on various uncontested issues
> including her despairing level of poverty, her extended participation in the Income
> Contingent Plan, her efforts to minimize expenses, her failure to ever obtain secure
> or lucrative employment, and her inability to ever repay any portion of the debt.
> Plaintiff, because of an overwhelming sense of shame, initially did not introduce that
> she was assaulted in 1995 in the instant case.

---

[19] The Fourth Circuit Court of Appeals has concluded it is appropriate to apply the same
standard of review to motions brought pursuant to either Rule 59 or Rule 60 (which permits a party
to seek relief from a judgment or order).  *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989)
(citing *U.S. Fid. & Guar. Co. v. Lawrenson*, 334 F.2d 464, 465 n.2 (4th Cir. 1964), *cert. denied*, 379
U.S. 869 (1964) (holding that the standard governing relief on the basis of newly discovered
evidence under Federal Rules of Civil Procedure 59 and 60 is the same)).

However, shortly before trial, the defendant suggested a controversy over issues in plaintiff's history dating back to 1995. At this point, plaintiff attempted to obtain medical and mental health records and other documents to show what had happened to her. Unable to attain the records before the trial date, plaintiff filed a Motion to Continue the Trial.

. . . .

To find the medical and mental health records, plaintiff started by going through boxes of old legal documents because plaintiff needed to read cues for more information as the treatment had occurred some time ago at multiple facilities in multiple states at a very difficult time for plaintiff. At first, trying to recall the information needed was like reaching into empty space with eyes closed and retrieving nothing. Plaintiff used the legal documents as a starting point. Then, plaintiff started contacting facilities.

Motion for New Trial at 3-4, 6 (footnotes omitted).

Ms. Greene appears to explain the necessity for her to introduce the medical records on two bases: first, that this Court erred in denying her earlier Motion for Continuance of Trial, filed on August 17, 2012 ("Motion to Continue"); and second, her unrepresented status and, thus, inexperience, precluded her from anticipating the need for this evidence. With respect to the denial of the Motion to Continue, Ms. Greene admits one of its most glaring flaws:

Plaintiff's Motion for Continuance of Trial, which states that "plaintiff moves to continue the trial presently set for September 7, 2012 for 45 days to allow plaintiff the opportunity to obtain additional information and documents needed for trial," *fails to specify that the information and documents sought were medical and mental health records and related information from the investigation of the 1995 assault.*

*Id.* at 4 (emphasis added). In the Motion for New Trial, Ms. Greene offers no further explanation as to why she failed to specify in the Motion to Continue the nature of the documents and information she sought to obtain and why she would be unable to obtain such documents by the time of the trial.[20] As the United States has well observed:

---

[20] In the Affidavit, Ms. Greene asserts that her alleged mental illness and disability caused her to become confused about what documents she needed for trial. Affidavit at 7-8. No such

Plaintiff stated that she only became aware that medical records would be relevant shortly before trial (Docket 72, at pp. 3-4), although Plaintiff's Amended Complaint alleged that Plaintiff suffered from mental illness which impacted her ability to earn income (Docket 18, at ¶¶ 6 and 7). Plaintiff otherwise did not explain why she did not attempt to locate the records during the one year and five month period this adversary proceeding had been pending before trial.

Response to Motion for New Trial at 4.

Ms. Greene's core argument for her failure to introduce the medical records, however, appears to be based upon her unrepresented status in this matter. Ms. Greene states she could not anticipate "the turn the case took" until shortly before trial. Motion for New Trial at 7. This unexpected "turn" was Ms. Greene's realization that she would have to prove by a preponderance of the evidence that her alleged medical and/or mental health conditions would continue contributing to her inability to work in certain environments in the future, and, specifically, office environments where men are present. *See Greene*, 484 B.R. at 121. Ms. Greene insinuates in her motion that the United States placed the issue of her alleged medical and/or mental health conditions into controversy. *See* Motion for New Trial at 3. She also suggests that she believed, until shortly before

---

contention was proffered either in the Motion to Continue or at trial when she discussed the continuance. This Court commented on the denial of the Motion to Continue in *Greene*:

> Ms. Greene testified that it was her understanding that the military would no longer have medical records for the time period when she was a military dependent, except for hospitalization records. Tr. at 33. Ms. Greene filed a Motion to Continue the trial on August 17, 2012. *See* Docket Entry 38. Ms. Greene represented *at trial* that the basis for asking the Court to continue the trial was to provide her time to investigate whether any of her medical records could be obtained from the military because she had, at that point, realized that the records might be relevant to the proceeding. Tr. at 33. However, she did not include this reasoning in her motion, *id.* at 34, and the Court denied it. *See* Docket Entry 40. Ms. Greene thereafter attempted to locate her military medical records by searching through legal files in her possession related to the suit she filed against the Department of Navy but was unable to do so. Tr. at 34.

*Greene*, 484 B.R. at 105 n.5 (emphasis added).

31

the trial, that the United States would not challenge the bases she asserted for her inability to maintain a minimal standard of living during a significant portion of the student loan repayment period. *See id.* at 7. However, the record clearly shows that Ms. Greene herself put these matters directly in issue prior to trial: "In her Amended Complaint and at trial, Ms. Greene assert[ed] that she has severe anxiety disorder that 'negatively affects her ability to work' or to improve her level of employment beyond the low-paying jobs she has held in the past." *Greene*, 484 B.R. at 121 (quoting Am. Compl. ¶¶ 6-7; Tr. at 26-27). By asserting her alleged medical and/or mental health conditions in her pleading as a basis upon which she was entitled to relief, it was incumbent upon her to present at trial whatever evidence she deemed necessary and appropriate to sustain her burden of proof, which, in this case, was by a preponderance of the evidence. *Id.* at 108 (citing *Educ. Credit Mgmt. Corp. v. Frushour* (*In re Frushour*), 433 F.3d 393, 400 (4th Cir. 2005)). Given the assertions in Ms. Greene's own pleadings as to her alleged medical and/or mental health conditions and her remarkable ability to do legal research, which far exceeds any ability the Court has ever observed in an unrepresented party, it is improbable that, by the time of trial, Ms. Greene was unaware that her alleged medical and/or mental health conditions were at issue.

It is axiomatic that unrepresented litigants are to be afforded liberal construction of their pleadings. *Sinclair v. Mobile 360, Inc.*, 417 F. App'x 235, 243 (4th Cir. 2011) (unpublished decision) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) ("Put succinctly, we impose on *pro se* litigants—even those who may be cantankerous or make extraneous and inappropriate assertions against their opponents or the court—'less stringent standards than formal pleadings drafted by lawyers.'"). However, there are limits to the considerations given to unrepresented litigants. As Judge Mullen reminds:

"'Although the pleadings of *pro se* litigants are construed liberally, there is no lower standard when it comes to rules of evidence and procedure.'" *In re Thomas*, F. Supp. 2d., 2008 WL 112042 *3 n.4 (W.D. Va. 2008) (quoting *Powers v. Runyon*, 974 F. Supp. 693, 696 (S.D. Ind. 1997)). "While *pro se* litigants are afforded some latitude when it comes to technical procedural requirements, the Court expects them to follow the same rules of evidence and procedure as is required by those who are authorized to practice law." *El Rey v. Celebration Station*, 2006 WL 2811497 *2 (W.D.N.C. 2006); *see also Klabiner v. Rinaldi*, 2001 WL 823529 *5 (M.D.N.C. 2001) ("Additionally, there is no establishment of the authenticity of any document put before the court by [the plaintiffs]. Although *pro se* plaintiffs are afforded liberal construction of their complaints, motions and other pleadings, the court cannot ignore the rules of evidence and procedure at this stage of the litigation.").

*Johnson*, 2011 WL 6032706, at *3. In denying a motion to reconsider the granting of summary judgment, Judge Mullen further reminds of the limits of assisting an unrepresented litigant:

The plain language of Rule 59(e) does not compel reconsideration where the evidence under consideration is not "new" evidence and could have been "discovered" with reasonable diligence. Plaintiff had access to all parties necessary to achieve authentication prior to the summary judgment hearing. Thus, with reasonable diligence, the document could have been authenticated at the summary judgment stage. A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Westinghouse Savannah River Co.*, 305 F.3d at 290 (quoting 11 Wright, *et al.*, *supra*, § 2810.1, at 127-28). Second, in order to rely on newly discovered evidence as the basis for his Rule 59(e) motion, Plaintiff "must produce a 'legitimate justification for not presenting' the evidence during the earlier proceeding." *Small v. Hunt*, 98 F.3d 789, 798 (4th Cir. 1996) (quoting *RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658, 662 (4th Cir. 1992)). Plaintiff's asserted justification consists of his *pro se* status and lack of familiarity with the Federal Rules of Evidence. The Court is unaware of case law within this Circuit finding *pro se* status and lack of legal training alone to constitute "legitimate justification" sufficient to satisfy this requirement. Moreover, while district courts must liberally construe *pro se* complaints, courts cannot act as the *pro se* plaintiff's advocate. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the *pro se* plaintiff); *see also Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

*Id.* at n.2.

Like the plaintiff in *Johnson*, Ms. Greene has failed to meet the standards previously

announced by the Fourth Circuit Court of Appeals in several respects. First, a significant portion of the medical documentation attached to the Motion for New Trial apparently originated while Ms. Greene was being treated at Walter Reed Medical Center in Bethesda, Maryland, in 1995. *See* Motion for New Trial, Exh. 1. Several other documents attached to the motion appear to have been generated in 1996 and 1997 and relate to the medical treatment at Walter Reed Medical Center. *Id.* Exh. 2. Another portion of the attached medical documentation is dated October 19, 1994, and apparently originated from medical treatment Ms. Greene received from the University of Michigan Medical Center during that time period. *Id.* Exh. 3. Clearly, all of these documents existed at the time of trial.

Regarding the due diligence element, Ms. Greene states that she endeavored to find her medical records "by going through boxes of old legal documents . . . to read [for] cues for more information as the treatment had occurred some time ago at multiple facilities in multiple states . . . . Plaintiff used the legal documents as a starting point. Then, plaintiff started contacting facilities." *Id.* at 6. She does not state why such efforts were not undertaken during the discovery period prior to trial. By her own admission, Ms. Greene did not proceed in a diligent manner in locating the medical records she now seeks the Court to consider. To this end, Ms. Greene has failed to show that she "could not with reasonable diligence have discovered and produced" the evidence at the trial, *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989) (quoting *Frederick S. Wyle, P.C. v. Texaco, Inc.*, 764 F.2d 604,609 (9th Cir. 1985)), nor has she shown a "'legitimate justification for not presenting'" the evidence at trial, *Small v. Hunt*, 98 F.3d 789, 798 (4th Cir. 1996) (quoting *RGI, Inc. v. Unified Indus., Inc.*, 963 F.3d 658, 662 (4th Cir. 1992)). As Judge Mullen's remarks highlight, this Court must maintain the same rules of evidence and procedure for all litigants,

whether or not they are proceeding with counsel.  Thus, the Court cannot find that Ms. Greene's *pro*

*se* status and her lack of legal training obviate any of these elements so as to grant her Motion for a

New Trial.

Another basis exists to decline consideration of the medical records.  At trial, Ms. Greene

testified in general terms about her prior hospitalization and medical treatment, *see* Tr. at 26, which

is reflected in the documents as occurring in the Washington D.C., area.  The Court considered this

evidence in the reaching its conclusions as set forth in the Opinion.  *See Greene*, 484 B.R. at 105-06;

*see also id.* at 121 ("The sole evidence of any medical treatment was her testimony as to treatment

she apparently received over twenty (20) years ago . . . .").  All of the medical records attached to the

instant motion relate to medical treatment incurred by Ms. Greene in 1996 or earlier.  Further, Ms.

Greene admitted at trial that she had received no medical treatment since at least 2004.  Tr. at 50-51.

Based upon Ms. Greene's testimony, the Court was aware of the medical treatment described in the

medical records attached to the instant motion.  While the Court did not have the benefit of the detail

of the medical assessments and notes contained in the records in rendering its decision on the

Amended Complaint, the Court was cognizant of and considered the occurrence of the medical

treatment referenced therein.[21]   Nothing in the medical records submitted with the Motion

contradicts Ms. Greene's testimony that, as of the time of the trial, she had not had received medical

treatment of any kind since 2004, took no medications, and had no records of any medical treatment

---

[21] In *Greene*, the Court noted that "[Ms. Greene] produced no medical records of any kind
nor does she appear to have made any efforts to obtain records of the treatment that she testified she
received many years ago when she was a military dependent."  *Greene*, 484 B.R. at 121 (footnote
omitted).  Further, as the United States has observed, the "Plaintiff testified that she received
treatment with regard to mental illness when she had insurance, but that such insurance expired
when she turned 23, approximately 16 years ago."  Response to Motion for New Trial at 3.

since at least 1996.  *See* Tr. at 26, 33-34, 50-51.  Accordingly, the documents represent evidence

cumulative of that already considered by the Court and would not cause the Court to amend its

earlier finding that Ms. Greene failed to carry her burden as to the second prong of the *Brunner* test.

 *Greene*, 484 B.R. at 130.

## B.  The Job Search File

Ms. Greene also requests the Court to consider additional evidence not introduced at trial

concerning her efforts to obtain employment:

> The actual scope of the employment search evidence and the range of
> corroboration required were unclear to plaintiff prior to trial given the following:
> plaintiff's lack of success in obtaining secure and lucrative employment was
> uncontested as were plaintiff's desperately impoverished circumstances; and it was
> not contested that plaintiff is painfully poor, wholly unsatisfied with her plight, and
> not content with being underemployed; and it was undisputed that plaintiff has been
> seeking work; and given the level of plaintiff's poverty, plaintiff presumptively
> would take any steps within her ability to improve her circumstances.  Consequently,
> plaintiff did not foresee before trial what remaining issues regarding her search for
> employment would be at issue.  The evidence that plaintiff now seeks to add to the
> evidentiary record, though not with plaintiff at trial, was clearly referenced in the
> trial testimony.
>
> In the Memorandum Opinion, this Court specifically points to the absence of
> plaintiff's job search file to substantiate her testimony regarding her job search.
> Plaintiff respectfully requests to extend the evidentiary record with this file as it
> provides corroboration that plaintiff's job search in and out of the field she studied
> has been diligent and extensive and consistent with expectations established by the
> prevailing case law in the Fourth Circuit.

Motion for New Trial at 8.[22]

---

[22] Among the documents attached to the Motion for New Trial is an affidavit by Ms. Greene,
marked as Exhibit 4.  While the statements contained in Exhibit 4 largely recount events in Ms.
Greene's personal life, it also includes an explanation regarding how she engages in employment
searches (*i.e.*, by submitting written or electronic applications and searching on the internet).
Motion for New Trial, Exh. 4.  However, Ms. Greene offers no explanation or evidence in this
document in support of the elements necessary to succeed on her Motion for a New Trial.

In support of this portion of her argument, Ms. Greene appears to be referencing Exhibit 6 to her Motion for New Trial.  This document contains a lengthy list of information with each entry containing sections entitled "Employer," "Status," and "Job Wanted."  *Id.* Exh. 6 (hereinafter "Job Search File").  Ms. Greene testified both on her own behalf and in response to inquiries by the United States at trial concerning her efforts to obtain employment, Tr. at 39-48, which the Court considered.  *See Greene*, 484 B.R. at 106, 128-29.[23]  She now seeks to expand her trial testimony on this point apparently on the grounds that she was unclear as to the "actual scope of employment search evidence and range of corroboration required" and that she believed "it was undisputed that plaintiff has been seeking work."  Motion for New Trial at 8.  The basis for these conclusions is unstated, but all appear to sound from her assumptions as to what proof she would need to present to satisfy the *Brunner* test.  As previously stated, Ms. Greene's status as an unrepresented litigant alone provides no basis to permit a supplementation of the evidentiary record or a deviation from the rules of evidence and procedure that this Court must apply.  There is no explanation for Ms. Greene's failure to include the Job Search File, attached to the instant motion as Exhibit 6, for presentation as evidence at trial.  Further, Ms. Greene fails to show that the information contained in the Job Search File would not constitute evidence that is cumulative or otherwise duplicative of her testimony at trial; fails to explain how, if the Court did permit the Job Search File to be considered as additional evidence, the result in *Greene* would change; and, finally, fails to provide any legitimate justification for not presenting the Job Search File at trial.  As such, the Court must decline to both accept the Job

---

[23] Ms. Greene testified at trial that she maintained a list of companies that she either had sought or could seek employment from.  Tr. at 40.  Ms. Greene also referenced, in her reply brief filed following the trial, a "list of potential employers" by which she "tracks employment opportunities (job openings) and requirements."  Reply Brief at 25 (filed on October 19, 2012, following the trial).  The referenced list was not offered into evidence by Ms. Greene at trial.

Search File and reopen the evidence here.

### C.  The Additional Witness and her Evaluation of Ms. Greene's Medical Records

In her motion, Ms. Greene also requests the Court to allow the presentation of testimony from a new witness, Felicia Powell (hereinafter "New Witness"),[24] who is described as follows:

> [P]laintiff states that Felicia Powell, DQS Behavioral Healthcare Group, Hampton, Virginia, has reviewed plaintiff's medical and mental health records and has evaluated plaintiff.  This practice has substantial experience in providing expert witness testimony in cases involving trauma from sexual abuse.  Plaintiff respectfully requests that she be permitted to submit Ms. Powell's professional conclusions to this Court.

Motion for New Trial at 2 (footnotes omitted).  The apparent purpose for Ms. Powell's testimony, according to Ms. Greene, would be to provide "further evidence concerning her future prognosis for the evidentiary record."  *Id.* at n.4.  There is no indication from Ms. Greene that the proposed evidence from the New Witness existed at the time of the trial.  As such, Rule 59 of the Federal Rules of Civil Procedure does not support its admission now.

A critical requirement under Rule 59 is that the "newly discovered evidence" not be in fact "newly created evidence":

> Notwithstanding those general criteria for newly discovered evidence, binding precedent also recognizes an additional overarching requirement, namely, that in order for evidence to qualify as "newly discovered" for purposes of a motion for new trial, "the evidence must be in existence at the time of the trial." *N.L.R.B. v. Jacob E. Decker and Sons*, 569 F.2d 357, 364 (5th Cir. 1978); *see also Betterbox Communications Ltd. v. BB Technologies, Inc.*, 300 F.3d 325, 331 (3rd Cir. 2002) ("newly discovered evidence must concern facts in existence at the time of trial"); *Davis by Davis v. Jellico Community Hosp. Inc.*, 912 F.2d 129, 136 (6th Cir. 1990) (discussing "well-conceived rule that newly discovered evidence for motions under Rule 59 or Rule 60(b)(2) must pertain to evidence which existed at the time of trial"); *Rivera v. M/T Fossarina*, 840 F.2d 152, 156 (1st Cir. 1988) (evidence that came into existence after the court's judgment is not newly discovered evidence within the

---

[24] As noted in *Greene*, Ms. Greene was the sole witness at trial.  *Greene*, 484 B.R. at 105.

meaning of Rules 59 and 60); *Peacock v. Board of School Com'rs of City of Indianapolis*, 721 F .2d 210, 214 (7th Cir. 1983) ("Under Rule 59, the evidence also must have been in existence at the time of trial . . . ."). This is so because of bedrock principles of finality and certainty of judicial proceedings. Evidence which has only come into existence after the conclusion of a trial cannot justify the granting of a new trial "for the obvious reason that to allow such a procedure could mean the perpetual continuation of all trials." *Jacob E. Decker*, 569 F.2d at 364 (citation omitted); *see also State of Washington v. United States*, 214 F.2d 33, 46 (9th Cir. 1954) ("The policy of law in having an end to litigation, would in most cases prevent the reopening of a case because of after-occurring events."); *Hudson's Bay Co. Fur Sales v. American Legend Co-op.*, 115 F.R.D. 337, 341 (D.N.J. 1987) (cautioning that to allow new trial based on evidence that was new, not newly discovered, would be to "assure unending litigation and the demise of the concept of finality").

*Baucom v. Sisco Stevedoring, LLC*, No. 06-0785-WS-B, 2008 WL 2428930, at *4 (S.D. Ala. June

12, 2008) (unreported decision).

Judge Steele illustrated the operation of this limitation:

An example from the case law will illustrate the application of this limitation on the newly discovered evidence rule in circumstances markedly similar to those presented by Baucom. In *Ryan v. U.S. Lines Co.*, 303 F.2d 430 (2nd Cir. 1962), an injured seaman brought an action for maintenance and cure and other remedies against the owner of the vessel on which injury occurred. After a bench trial, the court found unseaworthiness and awarded damages in the form of lost wages, pain and suffering, and maintenance and cure. The plaintiff then moved for new trial on the basis of newly discovered evidence, pointing to an affidavit signed by his treating physician, in which the doctor averred that he had examined the plaintiff several times following the trial and that his prognosis was one of continued disability and need for medical treatment. The trial court denied the motion for new trial. On appeal, the Second Circuit agreed, opining that the newly discovered evidence rule "permits reopening a judgment *only on the discovery of evidence in existence and hidden at the time of the judgment, and the results of new physical examinations are not such evidence.*" *Ryan*, 303 F.2d at 434 (emphasis added).

*Id.*; *see also Waite v. Cage*, No. H-11-1067, 2011 WL 2118803, at *4 (S.D. Tex. May 27, 2011)

(unreported decision) ("The proffered evidence must be 'newly discovered' rather than 'newly

created.'") (citing *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 412 (7th Cir. 2006); *Baucom*, 2008 WL

2428930, at *5; *Repurchase Corp. v. Bodenstein* (*In re Repurchase Corp.*), No. 05 C 7075, 2008 WL

4379035, at *8 (N.D. Ill. Mar. 24, 2008) (unreported decision); *Gray v. Griffin* (*In re Griffin*), Adv.

No. 02-9403, 2004 WL 5846711, at *3 (Bankr. N.D. Ga. May 10, 2004) (unreported decision)); *Am. Plastic Equip., Inc. v. Toytrackerz, LLC*, No. 07-2253-DJW, 2010 WL 1284471, at *10 (D. Kan. Mar. 31, 2010) (unreported decision) ("The Nunc Pro Tunc Assignment proffered by Plaintiff, however, is not 'newly discovered' evidence but rather 'newly created' evidence."). Ms. Greene appears to wish the New Witness to testify regarding her apparent review of Ms. Greene's medical records, which occurred since the trial or, in the alternative, to be able to offer the New Witness's written evaluation for the Court's consideration. Accordingly, granting of a new trial for the purpose of acceptance of the testimony and/or written evaluation of the New Witness is inappropriate under Rule 59, as such evidence was not in existence at the time of trial.[25]

### D. Domestic Violence Shelter Services

In her Motion for New Trial, Ms. Greene represents that, among the exhibits attached to the motion, is "a document prepared by the legal counsel of a domestic violence shelter where plaintiff lived which indicates the type of services plaintiff received and explains that records for such programs are generally not released except in very narrow circumstances not encompassing any

---

[25] Ms. Greene cites to *Robinson v. Educational Credit Management Corp.* (*In re Robinson*), 416 B.R. 275 (Bankr. E.D. Va. 2009), an opinion of this Court decided by Judge Mitchell, as supporting her plea to reopen the evidence here. Motion for New Trial at 2 n.6. In *In re Robinson*, "[t]he debtor did not present any further evidence regarding her medical diagnosis, her current condition, her chances for recovery, or the effect of the diagnosis on her ability to be employed in the future." *In re Robinson*, 416 B.R. at 280 (footnote omitted). Judge Mitchell later commented that "[s]hould the debtor later obtain medical evidence showing that she could never be employed due to her diagnosis, she may seek relief under Rule 9024, Federal Rules of Bankruptcy Procedure, which incorporates Rule 60, Federal Rules of Civil Procedure, from the judgment dismissing her complaint." *Id.* at n.4. Judge Mitchell did not determine that any such relief would be granted but instead observed that the debtor *could* seek such relief. *See id.* Furthermore, the commentary in *In re Robinson* in no way suggests that a court may derogate from the requirement that evidence must be "newly discovered"—not "newly created"—to qualify as grounds for a new trial pursuant to Rule 59.

action, suit, or other judicial, legislative, or administrative proceeding." Motion for New Trial at 2-3.  Ms. Greene also states that "because of the confidentiality of information provided by crime victims to crisis intervention counselors for victim services programs enacted under federal statute, such programs generally do not release records.  Consequently, plaintiff is unable to provide records for counseling or support services from crisis intervention or domestic violence shelter programs or services." *Id.* at 3.  The only exhibit attached to the motion that the Court can construe as relating to these representations is that which is marked as Exhibit 5.  The document, entitled "Motion to Quash Subpoena," is signed by an attorney for the Domestic Violence Center of Howard County, Inc., is dated January 11, 2001, and was apparently filed in the United States District Court for the District of Columbia, in the case of *Luria N. Greene v. John H. Dalton, Secretary, Department of Navy*, Civil Action 96-02161.

Ms. Greene has likewise failed to meet the well-established standards in this circuit for newly discovered evidence with regard to this request.  According to the date on the document, this document was long in existence at the time of the trial in this matter.  Further, Ms. Greene fails to establish why she was unable to locate and present such document, which is part of the public record, at trial.  Moreover, it is wholly unclear what purpose such document would serve in the instant matter.  Accordingly, the Court finds that Exhibit 5 attached to the motion does not provide a basis upon which this Court may grant a new trial

### E.  The January Exhibits

The requirement that evidence be newly discovered, rather than newly created, in order to grant a new trial also prevents the Court's consideration of the exhibits filed by Ms. Greene on January 18, 2013. The January Exhibits contain an approximately one-page statement by Ms. Greene

in which she states she has "received a current diagnosis," presumably a reference to the Riverside

Document, which is attached thereto, and, among other things, sets forth a "final diagnosis" of

dissociative disorder.  Also contained in the January Exhibits are three documents entitled as

follows: "Guidelines for Treating Dissociative Identity Disorder in Adults"; "Dissociative Identity

Disorder (formerly Multiple Personality Disorder)"; and "Post-Traumatic Stress Disorder Research."

 The January Exhibits further include a one-page printout from the internet regarding credit scores; a

document entitled "Public Housing Criteria," allegedly from the Hampton Redevelopment and

Housing Authority; and a copy of a weekly radio address by the President of the United States

regarding Wall Street reform measures.  Finally, among the January Exhibits are an article from the

Federal Trade Commission entitled "How Credit Scores Affect the Price of Credit and Insurance";

an article entitled "Work-at-Home Businesses," also apparently authored by the Federal Trade

Commission; and an untitled document from the Secretary of the United States Department of

Housing and Urban Development.[26]

The Riverside Document is dated January 18, 2013, and, thus, was not created until well after

the trial here and the issuance of the Opinion.  Therefore, the Riverside Document fails to qualify as

"newly discovered evidence" for purposes of Rule 59.  Furthermore, even if the Court accepted the

Riverside Document as evidence, while it appears to indicate that Ms. Greene was seen at the

hospital for "post-traumatic stress disorder," it fails to offer any insight into the nature and extent of

such disorder and in no way provides any information on the possible effect, if any, of such disorder

---

[26] The affidavit attached to the Motion for a New Trial as Exhibit 4 contains statements related to credit scores and credit ratings.  As stated previously, however, that document does not offer any explanation or evidence in support of the elements necessary to support her Motion for New Trial.

on Ms. Greene's current or future ability to be successfully employed, with or without restrictions.

With regard to the remainder of the documents comprising the January Exhibits, the Court finds that these, too, do not provide any basis upon which the Court should grant a new trial here. Like many of the other proposed items of evidence Ms. Greene wishes the Court to now consider, she has failed to sustain her burden of showing that these items could not have been discovered and produced prior to the trial even if she had exercised due diligence in her attempts to locate them. Ms. Greene also fails to demonstrate why these proposed items of evidence are material and would likely contribute to a new outcome in the instant matter. Accordingly, for these reasons, the January Exhibits will not be considered by the Court and provide no basis for this Court to order a new trial.[27]

## IV.   Summary

For the reasons set forth herein, the Court finds the Motions should be denied. A separate Order denying the Motions will be entered. Ms. Greene is advised that an appeal lies from this matter to the United States District Court for the Eastern District of Virginia. Except as provided in Federal Rules of Bankruptcy Procedure 8002(b) and 8002(c), any notice of appeal must be filed with the Clerk of this Court within fourteen (14) days of the date of entry of the order to be entered by the Court. The filing fee for a notice of appeal is $298.00.

Upon entry, the Clerk shall transmit a copy of this Memorandum Opinion to Luria Nicole Greene, 727 Halifax Avenue, Hampton, Virginia 23663, by first class mail, postage prepaid, as well

---

[27] The Court has determined that Ms. Greene's requests to submit additional evidence and hold a new trial should be denied. Likewise, the Court must deny Ms. Greene's requests to amend its findings of fact, which requests were dependent upon whether the Court permitted Ms. Greene to submit additional evidence relating to her alleged medical conditions, employment search, and income at this juncture. See Section II, supra.

43

as through the Court's Bankruptcy Noticing Center.  The Clerk shall also transmit, by electronic

means, a copy of this Memorandum Opinion to Susan L. Watt, Supervisory Assistant United States

Attorney; Gregory D. Stefan, Assistant United States Attorney; and to Debera F. Conlon, Assistant

United States Trustee.

**Entered this 22nd day of April, 2013, in the Eastern District of Virginia.**

Stephen C. St. John
Chief United States Bankruptcy Judge
for the Eastern District of Virginia

Entered on Docket: 4/22/2013